# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**KAYRA G.,[1]**

      **Plaintiff,**

                          **Case No. 1:20-cv-10897**

**v.**                     **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Kayra G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

On November 29, 2016, Plaintiff filed her applications for benefits, alleging that she has been disabled since November 1, 2015. R. 112–13, 160–61, 289–305. The applications were denied initially and upon reconsideration. R. 162–73, 179–84. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 187–91. Administrative Law Judge ("ALJ") Karen Shelton held a hearing on June 4, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 38–85. In a decision dated August 29, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2015, Plaintiff's alleged disability onset date, through  the date of that decision. R. 12–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 29, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 27, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On October 28, 2020, the case was reassigned to the undersigned. ECF No. 8. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

5

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 37 years old on November 1, 2015, her alleged disability onset date. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 14.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: ascending aortic aneurysm, stable at 4cm; degenerative disc disease; asthma; anxiety; and depression. *Id*.  The ALJ also found that Plaintiff's diagnosed gastroesophageal reflux disease ("GERD"), hypertension, and hyperlipidemia, and "noted" bilateral carpal tunnel syndrome, were not severe impairments. R. 15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 15–17.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 17–24. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a hostess. R. 23–24.

At step five, the ALJ found that a significant number of jobs—*e.g.,* jobs as a final

assembler, a bench hand, and a document preparer—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 24–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2015, her alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 25; *Plaintiff's Reply Brief*, ECF No. 31. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Barbara Kelly, Ph.D.

On February 2, 2017, Barbara Kelly, Ph.D., conducted a consultative psychological examination of Plaintiff. R. 871–74. Under a heading entitled, "Medical Illnesses," Dr. Kelly noted as follows:

> Include ascending aortic aneurysm, asthma, gastroesophageal reflux disease, sleep apnea with use of CPAP, disk herniations, and bilateral carpal tunnel syndrome. She is receiving individual psychotherapy services on a monthly basis at AtlantiCare Behavioral Health. Sleep is disturbed with initial, middle, and terminal insomnia. Appetite is decreased. Hallucinations are not present. Delusions are not elicited. Insight and judgment are fair. Her father has depression and obsessive-compulsive disorder. Her son has depression, obsessive compulsive disorder, and attention deficit hyperactivity disorder. Her mother and sister have depression. Her sister also has anxiety and panic disorder. Mood is depressed. Affect is depressed and tearful. Motor activity is normal. The claimant also reports anhedonia with diminished interest in activities. She stays home except for going to medical appointments due to anxiety and loss of interest in activities. She also reports fatigue, very low energy, poor concentration, forgetfulness, self blame, and feelings of excessive guilt. She has been irritable, but has not experienced episodes of

8

mania. The claimant also has a history of bulimia nervosa. She stopped bingeing and purging 5 years ago. She continues to watch her weight and will not allow her weight to go over a certain number. She gained minimal weight during her pregnancy and reports symptoms of gastroesophageal reflux disease started after bingeing and purging on a daily basis for 1-1/2 to 2 years. The claimant received treatment for bulimia in 2005 on an outpatient basis at AtlantiCare. She has experienced episodes of depression for many years, reporting a worsening of symptoms after the birth of her son, but was able to cope at that time. She has been experiencing severe symptoms for the past 3-4 months. Panic attacks are also reported with symptoms including chills, shortness of breath, sweating, heart pounding, chest pain, and paresthesias. These attacks cause her to avoid places and activities that may trigger an attack. She has to leave the situation she is in when symptoms present and she fears the onset of another attack.

R. 872. Upon mental status examination, Dr. Kelly reported as follows:

The claimant is alert, cooperative, in distress and tearful at times. She appears older than her stated age. She is 5 feet 1 inch tall and 182 pounds. She is casually dressed and poorly groomed. Gait, posture, and motor activity are normal. Eye contact is appropriate. Speech is coherent, fluent, and goal directed. She is partially oriented in 3 spheres. Able to state the month and year, and day of the week, but stated it is February 9, 2017. She also stated she is in Atlantic City, New Jersey. She was able to name both current and former presidents. She was able to spell "world" both forward and backward. Able to do serial 7's only to 28 without error. She multiplied 9 x 6 incorrectly, stating 9 x 6 equals 42. For 3 object recall, she recalled 3 of 3 objects for immediate recall and l of 3 objects for delayed recall. For 6 digit recall, she recalled 6 digits forward and 3 digits backward. She stated the shape of a ball is round, there are 60 seconds in a minute, and a thermometer takes temperature. She was able to count backward from 20 to 1 correctly.

R. 873. Dr. Kelly went on to note Plaintiff's activities of daily living as follows:

The claimant is independent with self-care, but needs reminders to brush her hair. She does not attend religious services, but provides child care and cares for a dog. She has no friends and does not socialize. She has withdrawn from others and stays home. Household chores are limited to cooking due to issues with her back. She goes out of her home independently only when necessary due to anxiety. She does not take public transportation. Interests and hobbies are music, computer activities, and shopping. She has stopped these activities due to loss of interest. The claimant needs reminders to keep appointments and do tasks. She does not finish tasks. Her boyfriend pays the bills and she would need assistance with bill paying.

*Id*. According to Dr. Kelly, Plaintiff "will require oversight in management of funds." *Id*. Dr.

Kelly diagnosed major depressive disorder, recurrent, severe with anxious distress; panic

disorder; and bulimia nervosa, in full remission. *Id.* Plaintiff's prognosis was guarded. R. 874.

**B.    Reviewing State Agency Psychological Consultants**

John Thibodeau, Ph.D., conducted an initial review of Plaintiff's medical record on March 2, 2017. R. 86–111. Dr. Thibodeau answered a series of questions that "help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." R. 94–95, 107–08. Dr. Thibodeau found that Plaintiff was not significantly limited in her ability to remember locations and work-like procedures and to understand and remember very short and simple instructions, but was moderately limited in her ability to understand and remember detailed instructions, as a result of "the depression that impacts cognitive capacities." R. 94, 107. Plaintiff was not significantly limited in her ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; and make simple work-related decisions. R. 94–95, 107–08. However, Dr. Thibodeau found that Plaintiff was moderately limited in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, as a result of Plaintiff's "depression that impacts energy and motivation." R. 95, 107–08. According to Dr. Thibodeau, Plaintiff had no social interaction limitations. R. 95, 108. As for adaptation limitations, Dr. Thibodeau found that Plaintiff was not significantly limited in her ability to be aware of normal hazards and to take appropriate precautions; to travel in unfamiliar places or use

10

public transportation; and to set realistic goals or make plans independently of others; but was moderately limited in her ability to respond appropriately to changes in the work setting "due to the interferences by depression on social judgment." *Id.* Under the heading entitled, "MRFC – Additional Explanation[,]" Dr. Thibodeau provided the following narrative:

> A. Can remember locations and work-like procedures and *can remember and understand very short and simple instructions*.
> B. *Can carry out very short and simple instructions*. Can maintain attendance, perform activities within a schedule, and can be punctual within customary tolerances. Can sustain ordinary routines without supervision. Can work in coordination with or proximity to others without being distracted by them. Can make simple work related decisions.
> C. Can ask simple questions and request assistance. Has the ability to interact appropriately with the general public. Has the ability to accept instructions and respond appropriately to criticism from supervisors. Has the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Has the ability to be socially appropriate and to adhere to basic standards of neatness and cleanliness.
> D. Has the ability to be aware of normal hazards and take appropriate precautions. Has the ability to travel in unfamiliar places or use public transportation. Has the ability to set realistic goals or make plans independently of others.

R. 95–96, 108–09 (emphasis added).

Robert Campion, M.D., reviewed Plaintiff's medical record upon reconsideration for the state agency on June 5, 2017, and affirmed Dr. Thibodeau's assessment after noting that there was no additional psychiatric evidence. R. 114–59.

## V.    DISCUSSION

### A.    RFC and Opinion Evidence

Plaintiff argues that the ALJ's RFC determination lacks substantial evidence because the ALJ failed to properly weigh the opinions of Dr. Kelly and the reviewing state agency consultants, Dr. Thibodeau and Dr. Campion. *Plaintiff's Brief*, ECF No. 25, pp. 18–24; *Plaintiff's Reply Brief*, ECF No. 31, pp. 1–6. Plaintiff also contends that the RFC did not include all implicitly credited limitations and that the ALJ based the RFC on her own lay opinion.

11

*Plaintiff's Brief*, ECF No. 25, pp. 24–32; *Plaintiff's Reply Brief*, ECF No. 31, pp. 6–10. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lift/carry up to 10 pounds; stand/walk for two out of eight hours; and sit for six out of eight hours. Occasional climbing of ramps and stairs, no ladders, ropes or scaffolds. Can occasionally balance, stoop, kneel, crouch crawl. Able to understand, remember, and carry out simple routine and repetitive *tasks*; in a work environment free of fast paced production requirements; involving only simple, work related decision; with few, if any, work

12

place changes. Can work for two hours before needing a break. No exposure to
pulmonary irritants.

R. 17 (emphasis added). In making this determination, the ALJ considered years of record

evidence, including, *inter alia*,[4] Plaintiff's mental health therapy and medical management

beginning in September 2015; findings on initial intake that Plaintiff reported multiple stressors,

including the diagnosis of aortic aneurysm and a high-risk pregnancy, and her presentation as

well-groomed, cooperative, with good eye contact, and a logical thought process despite her lack

of insight, and no impairment of memory; initial diagnoses of generalized anxiety disorder and

bipolar affective disorder, with a later diagnosis of major depressive disorder; treatment notes

from 2015 noting anxiety and discomfort related to pregnancy and aortic aneurysm; Plaintiff's

transfer in January 2016 from initial short-term immediate crisis care to long-term outpatient

therapy and medication management; Plaintiff's report in March 2016 that Zoloft had been

helpful; notations throughout 2016 that Plaintiff reported difficulty in coping with her baby's

health issues as well as her own; Plaintiff's June 2016 report that she had left her job "for the

family," although that decision was difficult because she had enjoyed the work and felt

competent and well-respected in the workplace; Plaintiff's report in July 2016 that she was still a

little depressed, and was irritable at times; Plaintiff's decision in January 2017 to reduce her

mental health services to medication management only and an evaluation showing that Plaintiff

was capable of managing her health issues, engage in household chores, make safe decisions,

manage finances, nutrition, and problem solving with a slight degree of difficulty regarding

maintaining family relationships; a GAF score of 62, which represented only a mild range of

depression, and no history of suicidal thought/behavior; Plaintiff's February 2017 function report

---

[4] The Court focuses on evidence relating to Plaintiff's mental impairments, which form the basis
of Plaintiff's challenges.

in which Plaintiff indicated that she took care of her baby, although her older son fed and bathed

the baby, that she was independent regarding personal care, that she cooked daily, that she

experience anxiety if driving alone, and difficulty with concentration, that she needed to write

everything down or would forget her appointments, that she had no difficulty getting along with

others and had no issues regarding interaction with authority figures, but that she did not

socialize, was anxious in large groups, and was anxious when stressed or faced with change;

Plaintiff's statement to her therapist in February 2017 that she did not need therapy and her

consequent move to medication management status only, with encouragement to "return to

therapy if needed"; Plaintiff's return in March 2017 to therapy in addition to medication

management; May 2017 treatment notes that indicated that an exacerbation of household stress

had caused Plaintiff to avoid others, and that Plaintiff presented as sad and tearful but composed,

that she reported difficulty with sleep due to anxiety and pain and stated and difficulty paying

attention; that Plaintiff reported in July 2017 a worsening of anxiety and depression, with panic

attacks, chest pain, shortness of breath and palpitations; that she sometimes would not leave her

home for up to five days at a time and sometimes missed appointments because of panic and

anxiety; that increased anxiety and physical exhaustion were noted in August 2017; that Plaintiff

reported in December 2017 a worsening of stressors, but stated that she could "handle it"; that

2018 therapy notes indicated that Plaintiff continued to experience various family related

stressors, including delays in her baby's development and the baby's diagnosis with autism, and

that she had difficulty requesting help from her support system; that an October 2018 therapy

note reflected ongoing stressors resulting in an exacerbation of symptoms and feeling

overwhelmed; that 2019 treatment notes indicated that Plaintiff experienced mood swings, anger

and anxiety regarding her child's diagnosis, marriage issues, and feeling down, depressed and

14

hopeless, although some of these stressors had been alleviated by April 2019 and Plaintiff reported that she was doing better with coping overall; that Plaintiff testified at the hearing that her anxiety and panic attacks were a trigger for asthma, and that the asthma results in increased anxiety/panic, that she cannot drive alone due to panic attacks, and that she had previously left jobs because of her mental health difficulties. R. 18–22; *see also* R. 22 ("While the claimant continues to exhibit a range of symptoms, such as depression and anxiety, it appears from treatment notes that most of these do not exceed a moderate level, and are situationally based.").[5] In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges this RFC determination, arguing that the ALJ failed to properly consider the opinions of the state agency psychological consultants, Dr. Thibodeau and Dr. Campion, and the opinion of Dr. Kelly. *Plaintiff's Brief*, ECF No. 25, pp. 18–24; *Plaintiff's Reply Brief*, ECF No. 31, pp. 1–6. This Court disagrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34,

---

[5] The ALJ also considered the opinions of Dr. Kelly, Dr. Thibodeau, and Dr. Campion, which are addressed next.

42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

---

[6] As previously noted, Plaintiff's claims were filed on November 29, 2016. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"), and § 416.927 *with* § 416.920c(a) (same).

inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (cleaned up). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6), 416.927(c)(1)-(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). The Court addresses Plaintiff's challenges in turn.

### 1. Reviewing state agency psychological consultants and "implicitly credited limitations" from their opinions

In crafting the RFC determination, the ALJ expressly considered the opinions of the reviewing state agency psychological consultants:

> Great weight is accorded to the conclusions of the State agency psychological consultants in finding the claimant has no more than a moderate degree of limitation due to mental health related symptoms. Less weight is accorded to the conclusion that the claimant can perform work related activities at a light exertional level as noted by the State agency medical consultants. A thorough review of the record, including information received at the hearing level, better supports a finding of limitation to a sedentary exertional level. (Exhibits 1A, 2A, 5A and 6A).

R. 23. In challenging this consideration, Plaintiff complains that, although the ALJ assigned "[g]reat weight" to these consultants' findings of moderate limitations due to mental health related symptoms, the ALJ did not describe their findings "regarding RFC limitations, nor stated how much weight was accorded to such findings" and, therefore, the ALJ did not address or weigh the opined "functional limitations[.]" *Plaintiff's Brief*, ECF No. 25, p. 19; *see also Plaintiff's Reply Brief*, ECF No. 31, pp. 1–3, 7–8. Therefore, Plaintiff contends, "the decision does not present sufficient basis for judicial review or comply with the applicable regulations." *Plaintiff's Brief*, ECF No. 25, p. 20; *see also Plaintiff's Reply Brief*, ECF No. 31, pp. 2–3. Plaintiff goes on argue that "this is not a harmless omission because there is a significant discrepancy between the State Agency opinions regarding functional limitations and the ALJ's RFC finding." *Plaintiff's Brief*, ECF No. 25, p. 20.

Plaintiff's arguments are not well taken. While it is true that the ALJ did not detail the state agency psychological consultants' opinions or explicitly explain her consideration of the regulatory factors, R. 23, the Court is not persuaded that this omission renders the ALJ's consideration unreviewable or otherwise requires remand because any error was, at most, harmless. As set forth above, Dr. Thibodeau and Dr. Campion opined in narrative form that

18

Plaintiff could remember locations and work-like procedures; could remember, understand, and carry out very short and simple instructions; could make simple work-related decisions, maintain attendance, perform activities within a schedule, and be punctual within customary tolerances; could sustain ordinary routines without supervision and work in coordination with or in proximity to others without being distracted by them; could ask simple questions and request assistance and interact appropriately with the general public; could accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them or exhibiting behavioral extremes; could be socially appropriate and adhere to basic standards of neatness and cleanliness; and could be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, take public transportation, set realistic goals, and make plans independently of others. R. 95–96, 108–09, 133–34, 156–57. It is not apparent to the Court how or why the RFC—which includes mental limitations to, *inter alia*, understanding, remembering, and carrying out simple routine and repetitive tasks in a work environment free of fast-paced production requirements; to making only simple, work-related decisions; to few, if any, work place changes; and to working for two hours before needing a break—does not accommodate any of the mental limitations found by the state agency reviewing experts. R. 17. While Plaintiff asserts that there exists a "significant discrepancy" between these opined limitations and the ALJ's RFC, Plaintiff offers no explanation or citation to the record in support of that assertion. *See Plaintiff's Brief*, ECF No. 25, p. 20. Accordingly, Plaintiff's undeveloped argument in this regard has not established any error or, at most, only harmless error that does not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling

caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"); *cf. Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position."); *Wright v. Comm'r Soc. Sec.*, 783 F. App'x 243, 245 (3d Cir. 2019) ("We need not address this conclusory, undeveloped accusation.") (citations omitted).

In a separate but related argument, Plaintiff also contends that the ALJ's RFC is flawed because the ALJ did not include all implicitly credited limitations. *Plaintiff's Brief*, ECF No. 25, pp. 26–29; *Plaintiff's Reply Brief*, ECF No. 31, pp. 6–9. Plaintiff specifically argues that the state agency limitation requiring Plaintiff "remember and understand very short and simple instructions" and "carry out very short and simple instructions" has "no corresponding limitation in the RFC determination, nor does the ALJ provide any explanation for this omission." *Plaintiff's Brief*, ECF No. 25, p. 26; *see also Plaintiff's Reply Brief*, ECF No. 31, p. 8. According to Plaintiff, the ALJ's RFC limitation for "simple routine and repetitive tasks" omits the state agency experts' reference to "very short and simple instructions," arguing that "tasks" and "instructions" are different job requirements. *Plaintiff's Brief*, ECF No. 25, pp. 27–28 (citing R. 17); *see also id.* at 28–29 (arguing further that this omission and failure to explain is not harmless because a complete hypothetical with all of Plaintiff's limitations was not presented to the vocational expert and, therefore, the ALJ cannot rely on the jobs identified by that expert); *Plaintiff's Reply Brief*, ECF No. 31, pp. 8–9 (same). This Court disagrees. The Third Circuit has expressly stated that "[a] limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'" *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d

20

Cir. 2019) (citations omitted). Because the ALJ limited Plaintiff to, *inter alia*, the ability "to understand, remember, and carry out simple routine and repetitive tasks" and "only simple, work-related decision[s,]" R. 17, the Court finds that this RFC appropriately accommodated the state agency experts' restrictions to remembering, understanding, and carrying out very short and simple instructions. *See Hess*, 931 F.3d at 210.

### 2. Barbara Kelly, Ph.D.

When fashioning the RFC determination, the ALJ also considered the opinion of psychological consultative examiner Barbara Kelly, Ph.D., as follows:

> Regarding opinion evidence, psychologist Barbara Kelly, PhD provided a consultative examination in February 2017 at the request of the State agency. The claimant drove herself to the appointment, which she attended alone. The claimant reported she had not worked since June 2016, when she had quit her job due to medical and psychiatric illness, including depression, anxiety, panic disorder, back pain and ascending aortic aneurysm. She reported experiencing back and leg pain, as well as heart palpitations. She reported she had restrictions regarding lifting. The claimant reported an increase in anxiety since she stopped using Xanax. She reported experiencing suicidal ideation, but not having a suicide related plan. She reported experiencing panic attacks, resulting in avoiding places or activities that could trigger one. The l: [sic] presente4d [sic] as alert and cooperative, with a degree of tearfulness and distress. She maintained appropriate eye contact. The claimant reported she was independent regarding self-care, although needed reminders at time to care for her hair. She stated she was withdrawn from others and hand [sic] no friends or social activities. She stated she provided care for her child and dog. She stated she cooked for her household, but did not do any other chores due to back pain. She stated she would leave her home alone only when needed. She reported needing reminders regarding appointments and tasks. Dr. Kelly provided a diagnosis of major depressive disorder, recurrent, severe w/ anxious distress; panic disorder; bulimia nervosa, in full remission. (Exhibit 13F). While Dr. Kelly's observations have been considered in the residual functional capacity, which limits the claimant to simple, repetitive work, no weight is accorded to this assessment as there is [sic] work related abilities and/or limitations were not provided.

R. 22–23.

Plaintiff challenges the ALJ's consideration in this regard, arguing that the ALJ erred in assigning "no weight" to Dr. Kelly's opinion. *Plaintiff's Brief*, ECF No. 25, pp. 21–24;

*Plaintiff's Reply Brief*, ECF No. 31, pp. 3–6. According to Plaintiff, "[t]he ALJ appears to have rejected Dr. Kelly's opinion on the sole basis of it being incomplete" and, "[t]o the extent the ALJ deemed the report incomplete, and rejected it on this basis, such an action is inconsistent with the regulations" and the ALJ should have recontacted Dr. Kelly. *Plaintiff's Brief*, ECF No. 25, pp. 21–22 (citations omitted); *see also Plaintiff's Reply Brief*, ECF No. 31, pp. 5–6. Plaintiff also contends that, to the extent the Acting Commissioner argues that the Dr. Kelly did not provide a medical opinion that the ALJ had to weigh because she offered no functional limitations, the ALJ did, in fact, weigh the opinion. *Plaintiff's Reply Brief*, ECF No. 31, pp. 4–5. Plaintiff goes on to argue that the ALJ did not explain how she accounted for Dr. Kelly's opinion and that the RFC is incompatible with that physician's findings. *Plaintiff's Brief*, ECF No. 25, pp. 21–24; *Plaintiff's Reply Brief*, ECF No. 31, pp. 3–6.

Plaintiff's arguments are not well taken. As a preliminary matter, the Court disagrees with Plaintiff's characterization that the ALJ rejected Dr. Kelly's opinion because it was "incomplete." As detailed above, the ALJ explained that she assigned no weight to Dr. Kelly's opinion because that physician did not provide any work-related abilities or limitations. R. 23. Substantial evidence supports this explanation. *See Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) ("[S]ubstantial evidence supports the ALJ's conclusion that Dr. Frank's opinion was not well-supported, as Dr. Frank failed to reference any objective medical evidence supporting his statements of disability or articulate any specific functional limitations suffered by [the claimant]."); *Nixon v. Comm'r of Soc. Sec.*, No. CV 18-1631, 2019 WL 4748058, at *1 (W.D. Pa. Sept. 30, 2019) ("Thus, as Dr. Tran's opinion did not include specific functional limitations and merely opined as to Plaintiff's limited employability, the Court finds that the ALJ did not err in giving little weight to that opinion in his analysis."); *Akrigg v.*

22

*Comm'r of Soc. Sec.*, No. CV 17-0237, 2018 WL 1378699, at *8 (D.N.J. Mar. 19, 2018) (rejecting the plaintiff's argument that the ALJ's grant of "partial weight" to the consultative examiner's "assessment failed to inform subsequent reviewers—*i.e.*, this Court—of the basis for the ALJ's weighing of the evidence" where "the ALJ clearly noted some deficiencies in [the consultative examiner's] examination, such as not assigning a specific functional limitation to Plaintiff that quantified her exertional capacity, which justify attaching less weight to [the] opinion").

To the extent that Plaintiff insists that the ALJ should have recontacted Dr. Kelly, an ALJ is required only to "recontact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled, not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records." *Gladden o/b/o Hyman-Self v. Berryhill*, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28, 2018) (internal quotation marks omitted) (quoting *Kelly v. Colvin, C.A.* No. 09-759-RGA-SRF, 2013 WL 5273814, at *16 (D. Del. Sept. 18, 2013)). Notably, "[t]here is no obligation to recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled." *Id.* As detailed above, the ALJ considered the objective medical evidence and determined that the record before her offered sufficient information to reach a conclusion.

Plaintiff goes on to argue that, although the ALJ said she "considered" Dr. Kelly's observations when crafting the RFC, the ALJ "did not explain how the findings in Dr. Kelly's report were accounted for in the RFC, or how the RFC was consistent with a diagnosis of major depressive disorder, recurrent, severe with anxious distress and a guarded prognosis" and that "[t]he severity of the symptoms noted and credited by Dr. Kelly is not reflected in the RFC determination, which was based on mild to moderate mental impairments–not severe

depression." *Plaintiff's Brief*, ECF No. 25, pp. 23–24; *see also Plaintiff's Reply Brief*, ECF No. 31, p. 5 (arguing that the RFC is inconsistent with "Dr. Kelly's notations of panic attacks requiring her to leave the situation she is in when an attack occurs and causing her to avoid places and activities that may trigger an attack (Tr. 872), or needing reminders for self-care, appointments, and tasks; not finishing tasks; having no friends and being withdrawn from others; and leaving the house independently 'only when necessary due to anxiety.' (Tr. 873)" or with "Dr. Kelly's findings of tearfulness, poor grooming, being disoriented as to the date, making a calculation error with an inability to manage funds, or having delayed recall. (Tr. 873-74)").

Plaintiff's arguments are not well taken. While Plaintiff complains that there is no explanation as to how the RFC is consistent with Dr. Kelly's diagnoses, Plaintiff simply points to these diagnoses without identifying any additional functional limitations not already included in the RFC. *See id.* Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Additionally, as previously discussed, an ALJ must include only "credibly established" limitations in the RFC. *Rutherford*, 399 F.3d at 554; *Grella v. Colvin*, 2014 WL 4437640, at *18.

Similarly unavailing is Plaintiff's assertion that the RFC is deficient in some unidentified way because the RFC was based on mild to moderate mental impairments–not severe depression. To the extent that Plaintiff suggests that the ALJ's finding at step two—*i.e.*, that Plaintiff's severe impairments included, *inter alia*, depression—"no incantations are required at steps four

and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways" and, therefore, "the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Hess*, 931 F.3d at 209. Moreover, the ALJ explained in her decision why Plaintiff's severe impairment of depression resulted in only moderate limitations. R. 16–17, 22–23. Plaintiff goes on to point to statements in Dr. Kelly's report that Plaintiff believes Dr. Kelly credited—including, *inter alia,* panic attacks requiring her to leave a situation; avoiding places and activities that may trigger an attack; needing reminders for self-care, appointments, and tasks; not finishing tasks; having no friends and being withdrawn from others; and leaving the house independently 'only when necessary due to anxiety'—but these statements are simply Dr. Kelly's recording of Plaintiff's subjective complaints. R. 871–73. Notably, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin*., 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec*., No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). As discussed in more detail below, the ALJ properly discounted the intensity, persistence, and limiting effects of Plaintiff's subjective symptoms. Further, Plaintiff insists that

the RFC is not consistent with "Dr. Kelly's findings of tearfulness, poor grooming, being disoriented as to the date, making a calculation error with an inability to manage funds, or having delayed recall." *Plaintiff's Reply Brief*, ECF No. 31, p. 5. However, Plaintiff does not explain why the RFC that provides for an ability to, *inter alia*, "understand, remember, and carry out simple routine and repetitive tasks; in a work environment free of fast paced production requirements; involving only simple, work related decision; with few, if any, work place changes. Can work for two hours before needing a break[,]" R. 17, fails to accommodate Dr. Kelly's observations in this regard, nor does Plaintiff identify additional or different limitations that the ALJ should have included. *See Plaintiff's Reply Brief*, ECF No. 31, p. 5. Based on this record, Plaintiff has not established any harmful error flowing from the ALJ's consideration of Dr. Kelly's opinion. *See Shinseki*, 556 U.S. at 409–10; *Wright*, 783 F. App'x at 245.

### 3.    ALJ's "lay opinion" in the RFC determination

In continuing to challenge the ALJ's RFC determination, Plaintiff argues that the ALJ improperly based the RFC on her own lay opinion.. *Plaintiff's Brief*, ECF No. 25, pp. 29–33; *Plaintiff's Reply Brief*, ECF No. 31, pp. 9–10. This Court disagrees. The ALJ did not, as Plaintiff contends, simply rely on her own lay opinion in making the RFC determination. As detailed above, the ALJ relied on extensive medical and other record evidence when crafting the RFC. R. 17–23. Moreover, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Chandler*, 667 F.3d at 362 (stating that an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision"). In addition, as previously noted, it is the ALJ—not a physician—who is charged with making the ultimate disability and RFC determinations.

*Chandler*, 667 F.3d at 361. In any event, Plaintiff simply points to evidence regarding Plaintiff's mental impairments without explaining how such evidence supports her allegation of reversible error in the ALJ's decision. *Plaintiff's Brief*, ECF No. 25, pp. 30–31; *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Plaintiff's argument, therefore, apparently boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have been implemented. It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."). To the extent that Plaintiff invites the Court to reweigh the evidence, the Court declines to do so. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *cf. Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of the opinions of the reviewing state agency experts and Dr. Kelly.

### B.      Subjective Statements

Finally, Plaintiff challenges the ALJ's consideration of her subjective complaints, contending that the "ALJ failed to provide sufficient, valid reasons for rejecting" Plaintiff's allegations. *Plaintiff's Brief*, ECF No. 25, pp. 32–33; *see also Plaintiff's Reply Brief*, ECF No. 31, pp. 10–11. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints, R. 18–23, and found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 19. As previously discussed, the ALJ detailed years of medical evidence and

record testimony to support her findings. R. 19–23. The ALJ further explained her consideration

of Plaintiff's subjective statements as follows:

> In summary, while the claimant has medically determinable impairments that could
> reasonably cause some symptoms and limitations, the allegations are considerably
> broader and more restricted than is established by the medical evidence. This is not
> to say that the claimant was symptom free or did not experience difficulty
> performing some tasks. However, the objective evidence does not demonstrate the
> existence of limitations of such severity as to have precluded the claimant from
> performing all work on a regular and continuing basis at any time from the alleged
> onset date of disability.
>
> The claimant's complaints have not been completely dismissed, but rather, have
> been included in the residual functional capacity assessment, to the extent that they
> are consistent with the evidence as a whole. The combination of physical
> impairments, including mildly dilated ascending aorta (aneurysm), degenerative
> disc disease and asthma, results in limitation of work related activities to a
> sedentary exertional level, with additional limitations regarding climbing and
> postural movement. This considers lifting of no more than 10 pounds in the work
> environment and not requiring standing/walking for more than two hours each
> throughout the workday. This accounts for the claimant's self-reported lifting
> limitations as well as complaint of pain radiating from her back to her legs. The
> claimant's asthma is specifically addressed in limiting exposure to pulmonary
> irritants. The claimant's mental health related limitations, resulting in some
> difficulty with concentration, are considered in limiting the claimant to simple,
> routine and repetitive tasks, without fast paced requirements and few, if any
> changes in the work setting.

R. 23. In the view of this Court, this record provides substantial support for the ALJ's decision to

discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*,

717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff, however, insists that the ALJ erred in this regard, specifically taking issue with

the ALJ's finding that Plaintiff's mental health symptoms were moderate and were situational in

nature. *Plaintiff's Brief*, ECF No. 25, pp. 32–33; *Plaintiff's Reply Brief*, ECF No. 31, pp. 10–11.

The Court is not persuaded that the ALJ erred or, even if the ALJ erred, that such error was

harmful. First, the ALJ explained her findings. In addressing Plaintiff's mental health, the ALJ

noted, *inter alia*, that in September 2015, Plaintiff reported multiple stressors, including the

diagnosis of aortic aneurysm and her high risk pregnancy; at the end of 2015, Plaintiff

experienced "anxiety and discomfort related to pregnancy"; she reported anxiety and difficulty

coping after the birth of her baby in 2016; in January 2017, Plaintiff "decided to reduce mental

health services to medication management only" and an evaluation at the time showed that

Plaintiff "was capable of managing her health issues, engage in household chores and make safe

decision[s]"; in February 2017, Plaintiff felt "overwhelmed with household responsibilities, and

did not feel the need for therapy at this time" and moved to medication management only; in

May 2017, "exacerbation of household stress caused" Plaintiff to avoid others; in December

2017, Plaintiff "reported a worsening of stressors, but noted she could 'handle it.'" R. 21–22.

The ALJ went on to further explain why she found that Plaintiff's symptoms were situational, as

follows:

> Therapy notes from early 2018 indicated the claimant continued to experience
> various family related stressors and had difficulty requesting help from her support
> system. Of special concern was the assessment of "global delays" regarding her
> baby's development. In April 2018 the claimant reported the baby had been
> diagnosed with being on the autism spectrum. Frustration with lack of family
> support was discussed in May. Increased support was noted in June. Continued
> therapy and medication monitory was noted in October due to ongoing stressors
> resulting in exacerbation of symptoms and feeling overwhelmed. (Exhibit 18F).
> While the claimant continues to exhibit a range of symptoms, such as depression
> and anxiety, it appears from treatment notes that most of these do not exceed a
> moderate level, and are situationally based.
>
> Treatment notes from 2019 indicated the claimant experienced mood swings, anger
> and anxiety regarding her child's autism spectrum diagnosis, marriage issues, and
> feeling down, depressed and hopeless. By April 2019, it appeared that some of the
> claimant's stressors were resolved to a degree, with reported increased
> communication skills with her spouse, and the claimant's youngest child's
> adjustment to preschool. The claimant reported she was doing better with coping
> overall. (Exhibit 18F).

R. 22. The Court finds no error with the ALJ's findings or characterization of the evidence in this

regard. While Plaintiff points to evidence that she believes undermines or contradicts the ALJ's

findings, *Plaintiff's Brief*, ECF No. 25, pp. 32–33, the Court will not re-weigh the evidence and "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  March 29, 2023                              *s/Norah McCann King*
                                       NORAH McCANN KING
                                 UNITED STATES MAGISTRATE JUDGE